SANITARY FIREPROOFING & CONTRACTING CO. et al. v. SPRICKER-
HOFF et al.

(Circuit Court of Appeals, Second Circuit. April 19, 1905.)

No. 190.

1. PATENTS—SCOPE OF CLAIMS—INFRINGEMENT.

An inventor is not called upon to describe every use to which his in-
vention may be put, and, if he discloses it fully and clearly in one en-
vironment, a person who uses it in another and different environment,
the change requiring no inventive skill, cannot escape infringement.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 381.]

2. SAME—INFRINGEMENT—FIREPROOF WALLS.

The Geraerdts patent, No. 555,693, for a fireproof wall consisting of a
series of thin plates or blocks placed edge to edge, and provided with
grooves in their sides and ends, and with registering mortises in the
grooved edges thereof, and metallic tenons for connecting the plates or
blocks at the sides and ends, discloses invention, and is valid, and is in-
fringed by the use in building dumb-waiter shafts of plates or blocks,
each extending across one side of the shaft, having grooves, and mortises
and tenons on the horizontal edges, and on the vertical joints at the cor-
ners held together by metallic tenons bent at right angles and laid in
the horizontal grooves, such method being an obvious adaptation of the
principle of the patent to corner construction.

Wallace, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the East-
ern District of New York.

On appeal by the complainants from a final decree of the Circuit
Court for the Eastern District of New York, entered August 29,
1904, dismissing the bill of complaint, which was founded on let-
ters patent No. 555,693, granted March 3, 1896, to H. & W. Ger-
aerdts, for improvements in fire-proof walls. The opinion of the
Circuit Court is reported in 131 Fed. 868.

Henry D. Williams, for appellants.

Menken Bros., for appellees.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

COXE, Circuit Judge. The invention covered by the patent in
suit relates to walls in which a number of fire-proof plates are con-
nected by means of metallic tenons, which enter mortises in the
adjacent plates, the plates being perferably provided with longi-
tudinal grooves at their inner edges, which grooves are filled with
cement so as to produce a good joint, the inner faces of the plates
being covered with a layer of plaster. The plates are provided
with transverse mortises for the tenons, which extend into the ad-
jacent plates, so that the wall is held in position and strengthened
by perpendicular and horizontal tenons connecting the plates and
holding them firmly in place, each plate being fastened to the plates
above and below and also to the plates at either end. The plates
may be made of any suitable plastic composition and of any size.
They may be made solid or with cavities, smooth or molded into

any desired ornamental shape. Each plate is provided at its edges with longitudinal grooves into which suitable cement is placed to make a solid joint at the meeting edges of the plates.

The specification refers to the use of these plates for ceilings, but as its language in this respect is vague and indefinite and as their use for this purpose is not involved no further allusion to this part of the specification is required.

The claim is as follows:

"A fireproof wall, consisting of a series of thin plates or blocks placed edge to edge and provided with grooves in their sides and ends, and with registering mortises in the grooved edges thereof, and metallic tenons for connecting the plates or blocks at the sides and ends, substantially as set forth."

The usual defenses—lack of patentability and noninfringement—were interposed. The judge of the Circuit Court decided that the patent was valid but that the claim must be limited to the precise structure described and shown, and, as so limited, the defendants do not infringe.

We agree with the first conclusion, but are inclined to think that too narrow a construction was placed upon the claim. But three prior patents are cited in the record. The Fowler patent of June 3, 1873, shows building blocks with large central grooves and two smaller grooves on each side of the central groove extending continuously around the blocks. The large grooves are intended for the reception of mortar; the smaller grooves for the reception of dry cement which, in practice, is first inserted. After the dry material is evenly spread on each tier and filled into the smaller grooves the liquid mortar is poured into the larger grooves and, as it spreads through the structure, sufficient moisture is furnished to convert the dry cement into a binding material. The object of the inventor was to facilitate the laying of double-faced blocks with dispatch, exactitude, neatness and firmness. No tenons are used or suggested. Seldis, in 1873, described a cube-shaped building block, made in two or more segments, adapted to be fitted together by tongues and grooves or by dowel pins and sockets. Seldis evidently had in mind a convenient substitute for the large, heavy blocks of granite which were hoisted into position by a crane, requiring the co-operation of several men. By molding his block in segments each segment was of such size and weight that it could readily be handled by one man. The patent shows nothing germane to the controversy except that dowel pins and sockets were old in the building art, a proposition which would probably have been conceded. The patent to Frost of 1880 had for its object the fastening together of building blocks of the size and shape of an ordinary brick by an unadhesive material, which will permit the ready detachment of the blocks for reuse. The blocks were made with perforations for the reception of fastening pegs which connected them together. No mortar, cement or metallic tenon was used. The foregoing is the entire prior art so far as is disclosed by the record. It is seldom that so few references are cited against a patent and it is not pretended that any of these an-

ticipates the Geraerdts invention. Of course, mortises and tenons were old; so were building blocks provided with grooves and held together with mortar, and so was fire-proof material made in the form of plates and blocks. We are unable to find that these old elements were ever assembled in a structure like the one described and claimed.

It is said that there is no explanation of the manner in which a right-angle connection can be made, and as no method of turning a corner is suggested the claim must be construed to cover a straight wall only. An inventor is not called upon to describe every use to which his invention may be put. If he discloses it fully and clearly in one environment, a person who uses it in another and different environment, the change requiring no inventive skill, cannot escape infringement. The limitation suggested removes all vitality from the claim; under such limitation he alone can be held as an infringer who uses the fire-proof material to form one side only of an inclosure. When it is remembered that the invention is for a thin fire-proof wall it would seem that such restricted use would be most infrequent. A person having wit enough to use it on four sides, three sides or two sides of a small inclosure will avoid the claim. He cannot use it as a partition wall, but he can use it for a room, a vault, an elevator or a dumb-waiter shaft, with impunity. The greater the use the less would be the infringement. The complainants employ the invention, inter alia, in the construction of dumb-waiter shafts, extending through the various stories of a building, the interior of the shaft being from two to three feet square. The plates are grooved on the sides, namely, on the top and bottom of the plates when placed in position. They are held together by mortar and metal tenons in registering mortises, precisely as described in the patent. In so small a structure, having four corners, it is manifest that vertical grooves in the ends which do not come in contact with the plate placed at right angles thereto, perform no function whatever and therefore may be omitted. In order to hold the plates together at the corners a slight mechanical change from the construction shown in the drawings is made necessary. Instead of a straight metal tenon one is used bent at right angles to fit the horizontal grooves, one side of the groove being cut through at the end to permit the tenon to rest on the bottom of what is thus made a right angle groove. When the mortar is inserted and another plate is laid thereon these tenons connect the plates at the ends as the vertical tenons connect them at the sides. The defendants' structure is almost the exact counterpart of the complainants', except that their horizontal tenons are flat instead of round. It is unnecessary to dwell upon the details of the defendants' construction because it is conceded that it is substantially the same as the complainants'.

The defendants' brief contains the following frank admission:

"The solution of this case depends upon whether or not the complainants' construction of dumb-waiter shafts is covered by their patent. This is the sole question in this controversy and upon its determination the subsidiary matters in dispute depend. And at the outset of this discussion, it may be

admitted that there is no substantial difference between the complainants' and defendants' dumb-waiter construction, and if, therefore, the complainants' construction of these shafts is covered by its patent, then under the doctrine of equivalents, the defendants would be infringing on their rights."

Bearing in mind that there is nothing in the claim limiting it to a straight wall or to round tenons or straight tenons, we are of the opinion that infringement has been established. The invention relates to fire-proof walls for ordinary buildings constructed with hallways, rooms, closets, shafts, etc., having walls meeting at right angles. To construe the claim as applicable only to a straight wall and inapplicable when the only departures from the specification are those obvious changes made necessary when the plates meet at right angles, would, we think, be placing an unwarranted restriction on the claim.

The decree is reversed with costs and the cause is remanded with instructions to enter a decree for the complainants with costs.

WALLACE, Circuit Judge (dissenting). I dissent from the opinion of the court, and concur fully in the opinion of Judge Thomas in the court below so far as he decided that the defendants do not infringe the claim of the patent. The opinion of the court does not, in my view, set forth correctly the state of the prior art, and it sanctions a broader construction of the claim than can be fairly given to it.

The invention of the patent is a very narrow one, and, if it were necessary to pass upon the question of patentable novelty, it would be difficult to regard the claim as embodying anything more than an aggregation of old parts, in which each performs merely its old function. The grooved blocks were old in the wall-building art, blocks having registered mortises were old, and the metallic tenons were old, and the grooves had been used for affording mortar spaces, and the mortises and tenons for binding the blocks more firmly together, but the grooves and mortises and tenons had not been used in the same block. What the patentee did, and all he did, that was new, was to employ in the same block both the grooves, the mortises, and the tenons, thus binding the blocks together with the tenons as well as by the increased body of mortar held by the grooves. This is apparent from the proceedings in the Patent Office as disclosed by the file wrapper. The application described the subject-matter substantially as it is set forth in the patent, and originally contained three claims, as follows:

"(1) A fire-proof ceiling or wall, consisting of a series of plates or blocks which are connected by means of metallic tenons extending into registering mortises in the adjacent edges of the plates or blocks, substantially as set forth."

"(2) A fire-proof plate or block for walls and ceilings, provided with mortises in its sides and ends, adapted to receive connecting tenons, substantially as set forth."

"(3) A fire-proof plate or block for walls and ceilings provided with mortises in its sides and ends, and with grooves in said sides and ends, substantially as set forth."

These claims were rejected by the Patent Office for want of novelty. The applicant acquiesced, and amended his claims so that they read as follows:

"(1) A fire-proof ceiling or wall, consisting of a thin series of plates or blocks, placed edge to edge and provided with registering mortises in the adjacent edges of the plates or blocks, and metallic tenons for connecting the plates or blocks, at the sides and ends, substantially as set forth."

"(2) A fire-proof plate or block provided with grooves in its sides and ends and with mortises in its grooved sides and ends, substantially as set forth."

The claims were again rejected by the Patent Office for want of novelty. The applicant acquiesced, and thereupon by amendment he introduced the claim which appears in the patent. The claim specifies as constituents not only blocks provided with grooves in their sides and ends, but also provided with registering mortises in the grooved edges thereof, substantially as described. The registering mortises as described in the specification and shown in the drawings are distinct from and supplementary to the grooves, and some register transversely and some longitudinally, and they have a distinct and supplementary office in the composite structure. The specification reads as follows:

"The ends of the plates or blocks, *a*, are provided with mortises for receiving tenons, *d*, which extend into the corresponding mortises of the adjacent ends of the plates or blocks, so that the plates or blocks, *a*, are connected * * * in a longitudinal direction with the plates at the ends of the same."

These mortises, as well as the grooves in the ends of the blocks, are omitted by the defendants in constructing dumb-waiter shafts, which are the only walls made by them. The walls in these shafts are only a single block in width, and it would be impracticable to connect the plates at the corners by mortises and tenons such as are shown in the patent. It is true the defendants use the top and bottom grooves in the block, and thereby get the benefit of the more ample mortar space; and they also use a tenon laid in the grooves, and bent at right angles so as to enter the corresponding grooves at the corner of the wall; but as it was old to use the grooves for mortar spaces, and old to use tenons and mortar in binding the blocks of the wall together, it is quite impossible to discover what they have done which they were not entitled to do, or how they infringe, so long as they have not used the registering mortises described in the specification and enumerated in the claim. The patent is one in which there is no room for the application of the doctrine of equivalents. The claim must be confined, in view of the prior art and the action of the Patent Office, to a combination of the specific parts mentioned. The patentee thought only of a wall or ceiling in which a number of blocks were to be laid side by side, and framed his specification accordingly. If it had occurred to him that walls might be built consisting of single stones, one laid on top of the other, it is not improbable that he could have devised some means of binding the corners together by tenons; but this did not occur to him, and he did not devise any means for that purpose. It in-

volved practically as much invention to dispense with his registering mortises in the ends of the block, and utilize the groove with a right-angled tenon to bind the blocks together at the corners, as it did to bring into one structure the parts which he assembled together.